# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

| | |
|---|---|
| In re: NIO CO., LTD, <br><br> Appellant. | Appeal No. 2024-2262 |

## NOTICE FORWARDING CERTIFIED LIST

A notice of appeal to the United States Court of Appeals for the Federal Circuit was timely filed on August 25, 2024, in the United States Patent and Trademark Office (USPTO), in connection with the following trademark application:

**Mark: ONVO**
**Serial No.: 97/354,145**
**Filed: April 8, 2022**

Pursuant to 15 U.S.C. § 1071(a)(3) and Federal Circuit Rule 17(b)(1), the USPTO is today forwarding, to counsel for Appellant, a certified list of documents comprising the record in the USPTO. Giulio E. Yaquinto, Associate Solicitor, and Michael A. Chajon, Associate Solicitor, will represent the Director in this appeal. Counsel for Appellant may contact Mr. Yaquinto or Mr. Chajon at (571) 272-9035 to arrange for designating the appendix. *See generally* Fed. Cir. Rule 30(b).

Respectfully submitted,

KATHERINE K. VIDAL
Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office

Date: October 7, 2024    By: /s/ *Macia L. Fletcher*
**Macia L. Fletcher**
Paralegal Specialist
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
571-272-9035

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing NOTICE FORWARDING CERTIFIED LIST has been served, via electronic mail, on counsel for Appellant this 7th day of October, 2024, as follows:

Angel Roman Campos
Rebeccah L. Gan
Muncy, Geissler, Olds & Lowe, P.C.
125 S. Royal Street
Alexandria, VA 22314
Email: arc@mg-ip.com, rgan@mg-ip.com

By: /s/ *Macia L. Fletcher*
    **Macia L. Fletcher**
    Paralegal Specialist

Form PTO 55 (12-80)

# U.S. DEPARTMENT OF COMMERCE
## United States Patent and Trademark Office

October 7, 2024
(Date)

**THIS IS TO CERTIFY** that the annexed is an accurate statement of the content entries in the file of the trademark application identified below. The list was taken from the TSDR and TTABVUE electronic databases of the United States Patent and Trademark Office and comprises the record before the United States Patent and Trademark Office.

**The Trademark Application of:**

**Applicant: NIO CO., LTD**

**Application No.: 97/354,145**

**Date Filed: April 8, 2022**

**Mark: ONVO**



By authority of the
DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

*/s/Macia L. Fletcher*
**Certifying Officer**

# HISTORY OF SERIAL NO. 97/354,145
## Federal Circuit Appeal No. 2024-2262
## Mark: ONVO

| DATE | DESCRIPTION |
|---|---|
| 04/08/2022 | Application |
| 04/08/2022 | Drawing |
| 02/07/2023 | XSearch Search Summary |
| 02/07/2023 | Non-Final Office Action |
| 02/24/2023 | Response to Non-Final Office Action |
| 02/25/2023 | Trademark Snap Shot Amendment & Mail Processing Stylesheet |
| 03/20/2023 | Voluntary Amendment |
| 04/18/2023 | Final Office Action |
| 05/18/2023 | Request to Divide Application |
| 05/24/2023 | Request for Reconsideration After Final Office Action |
| 05/24/2023 | Notice of Appeal to TTAB |
| 05/25/2023 | Order: Appeal Acknowledged; Case Remanded |
| 07/27/2023 | Notice that Request to Divide Application is Incomplete |
| 07/28/2023 | Trademark Snap Shot Prosecution History for Informal Notice |
| 07/28/2023 | Voluntary Amendment |
| 07/29/2023 | Trademark Snap Shot Amendment & Mail Processing Stylesheet |
| 08/01/2023 | Notice that Processing of Request to Divide Application is Completed |
| 08/02/2023 | Trademark Snap Shot Amendment & Mail Processing Stylesheet |
| 08/29/2023 | Denial of Request for Reconsideration After Final Office Action |
| 08/30/2023 | Order: Proceedings Resumed |
| 10/29/2023 | Applicant's Appeal Brief |
| 11/02/2023 | Appeal Forwarded to Examiner for Brief |
| 12/22/2023 | Examining Attorney's Appeal Brief |
| 06/28/2024 | Board Decision Affirming Partial Refusal to Register |

| DATE | DESCRIPTION |
|---|---|
| 08/25/2024 | Notice of Appeal to the Federal Circuit |

This Opinion is Not a
Precedent of the TTAB

Mailed: June 28, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE
\_\_\_\_

Trademark Trial and Appeal Board
\_\_\_\_

*In re Nio Co., LTD*

Serial No. 97354145
\_\_\_\_

Roman Campos, Joe McKinney Muncy, P. Jay Hines and Leo V. Gureff of Muncy, Geissler, Olds & Lowe, PC, for Nio Co., LTD.

Brendan Quilici, Trademark Examining Attorney, Law Office 123, Susan Hayash, Managing Attorney.

\_\_\_\_

Before Cataldo, Greenbaum and Larkin,
 Administrative Trademark Judges.

Opinion by Greenbaum, Administrative Trademark Judge:

Nio Co., LTD. ("Applicant") seeks registration on the Principal Register of the standard character mark ONVO for

> Electric vehicle battery charging service; Electric vehicle service station for refueling and maintenance of electric vehicles; Rubber tire repair, in International Class 37.[1]

---

[1] Application Serial No. 97354145, filed April 8, 2022 under Trademark Act Sections 1(b) and 44(d), 15 U.S.C. §§ 1051(b) and 1126(d), based on Applicant's allegation of a bona fide intention to use the mark in commerce and claiming a priority date of October 12, 2021 based on the filing date of Applicant's China Application No. 59749546. During prosecution, Applicant perfected the Section 44(d) filing basis to Trademark Act Section 44(e), 15 U.S.C. § 1126(e), based on China Registration No. 59749546, issued April 7, 2022. March 20, 2023 Preliminary Amendment.

Serial No. 97354145

The Trademark Examining Attorney partially finally refused registration of the mark under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d) only as to the services identified as "Electric vehicle battery charging service; Electric vehicle service station for refueling of electric vehicles; Rubber tire repair" ("Refused Services"), on the ground that Applicant's mark, when used on or in connection with the Refused Services, so resembles the mark ONVO in standard characters and with design, displayed as , both owned by a single registrant ("Registrant") and registered on the Principal Register for

> Retail store services featuring convenience store items, gasoline, diesel fuel, truck driver amenities in the nature of souvenirs, laundry soap, video games, and truck supplies in the nature of motor oil, floor mats, air fresheners; retail store services in the nature of truck stops, travel centers and fuel stops featuring fuel; retail convenience stores, in International Class 35,

as to be likely to cause confusion, mistake or deception.[2]

When the partial refusal was made final, Applicant requested reconsideration and appealed to this Board. Reconsideration was denied, proceedings were resumed, and Applicant and the Examining Attorney filed briefs. We affirm.

---

[2] Reg. No. 6502747 (standard characters) issued September 28, 2021.

Reg. No. 6364493 (design) issued May 25, 2021, and describes the mark as follows: "The mark consists of the term 'ONVO,' and on top of the last letter sits a characterization of a bird, perched, facing forward with large opened eyes and small beak." Color is not claimed as a feature of the mark.

The partial refusal does not apply to the identified "Electric vehicle service station for maintenance of electric vehicles."

I.   Likelihood of Confusion

"The Trademark Act prohibits registration of a mark that so resembles a registered mark as to be likely, when used on or in connection with the goods or services of the applicant, to cause confusion [or] mistake, or to deceive." *In re Charger Ventures LLC*, 64 F.4th 1375, 2023 USPQ2d 451, at *2 (Fed. Cir. 2023) (cleaned up).

Our determination under Trademark Act Section 2(d) involves an analysis of all of the probative evidence of record bearing on a likelihood of confusion. *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973) (setting forth factors to be considered, hereinafter referred to as "*DuPont* factors"); *see also In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). We consider each *DuPont* factor for which there is evidence and argument. *See, e.g., In re Guild Mortg. Co.,* 912 F.3d 1376, 129 USPQ2d 1160, 1162-63 (Fed. Cir. 2019); *see also In re i.am.symbolic, llc*, 866 F.3d 1315, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017) ("The likelihood of confusion analysis considers all *DuPont* factors for which there is record evidence but 'may focus … on dispositive factors, such as similarity of the marks and relatedness of the goods.'") (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)).

Varying weights may be assigned to each *DuPont* factor depending on the evidence presented. *See Charger Ventures*, 2023 USPQ2d 451, at *4 ("In any given case, different *DuPont* factors may play a dominant role and some factors may not relevant to the analysis."). "Not all *DuPont* factors are relevant in each case, and the weight afforded to each factor depends on the circumstances. Any single factor may control

a particular case." *Stratus Networks, Inc. v. UBTA-UBET Commc'ns Inc.*, 955 F.3d 994, 2020 USPQ2d 10341, at *3 (Fed. Cir. 2020) (citing *In re Dixie Rests.*, 105 F.3d 1405, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)). However, in any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods and/or services. *See In re Chatam Int'l Inc.*, 380 F.3d 1340, 71 USPQ2d 1944, 1945-46 (Fed. Cir. 2004); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks.").

In applying the *DuPont* factors, we bear in mind the fundamental purposes underlying Trademark Act Section 2(d), which are to prevent consumer confusion as to source and to protect registrants from damage caused by registration of similar marks likely to cause such confusion. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 224 USPQ 327, 331 (1985); *see also Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 34 USPQ2d 1161, 1163 (1995); *DuPont*, 177 USPQ at 566.

We focus our likelihood of confusion analysis on the standard character mark ONVO (Reg. No. 6502747) because it is identical to Applicant's mark. If we find a likelihood of confusion with this mark and its identified services, we need not find it as to the cited registered design mark (Reg. No. 6364493) and its identical identified services. *See, e.g., Fiserv, Inc. v. Elect. Transaction Sys. Corp.*, 113 USPQ 1913, 1917 (TTAB 2015); *In re Max Cap. Grp. Ltd.*, 93 USPQ2d 1243, 1245 (TTAB 2010) (likelihood of confusion analysis confined to most similar cited mark).

    A.    Similarity or Dissimilarity of the Marks

We compare Applicant's mark ONVO and Registrant's mark ONVO, both in standard characters, "in their entireties as to appearance, sound, connotation and commercial impression." *In re Detroit Ath. Co.*, 903 F.3d 1297, 128 USPQ2d 1047, 1048 (Fed. Cir. 2018). *See also Palm Bay Imps. Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005). The marks are identical in all respects, as Applicant acknowledges. 6 TTABVUE 11, 17. This *DuPont* factor weighs heavily in favor of a likelihood of confusion. *See i.am.symbolic*, 123 USPQ2d at 1748.

    B.    Similarity or Dissimilarity of the Services, Channels of Trade and Conditions of Sale

Under these *DuPont* factors, we compare the services as they are identified in the application and cited registration. *See Detroit Ath. Co.,* 128 USPQ2d at 1052; *Dixie Rests.,* 41 USPQ2d at 1534; *see also Stone Lion Cap. Partners, LP v. Lion Cap. LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1161 (Fed. Cir. 2014). Again, the partial refusal is limited to the Refused Services.

    1.    Similarity of the Services

This *DuPont* factor "considers whether 'the consuming public may perceive [the respective goods [or services] of the parties] as related enough to cause confusion about the source or origin of the goods [or services]." *In re St. Helena Hosp.*, 774 F.3d 747, 113 USPQ2d 1082, 1086 (Fed. Cir. 2014) (quoting *See Hewlett-Packard Co. v. Packard Press Inc.*, 281 F3d 1261, 62 USPQ2d 1001, 1004 (Fed. Cir. 2002)). Although the services identified in the application and cited registration are not identical,

identity is not required to support a finding of likelihood of confusion. *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) ("[I]t is not necessary that the products [or services] of the parties be similar or even competitive to support a finding of likelihood of confusion.") (quotation omitted); *see also On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000) (the services need not be identical or even competitive to find a likelihood of confusion). Rather "likelihood of confusion can be found if the respective products are related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that they emanate from the same source." *Coach Servs.*, 101 USPQ2d at 1722 (citation and internal quotation omitted).

Moreover, and of particular importance here, the degree of similarity between the services required for confusion to be likely decreases because the marks are identical. *DeVivo v. Ortiz*, 2020 USPQ2d 10153, at *11 (TTAB 2020). Accordingly, we find unpersuasive Applicant's arguments that "neither Applicant nor [Registrant] offer overlapping goods and services," "[a]s the Examining Attorney indicates in the submitted evidence, there may be companies that provide both goods and services of the type at issue here, but neither the registrant nor Applicant's application claim both," and "[t]he same purchaser will know the difference between gasoline, diesel and an electric charger." App. Br., 6 TTABVUE 12-15. In any event, it is not necessary for the services to be "overlapping" in order to find that they are related for purposes of our likelihood of confusion determination. *Coach Servs.*, 101 USPQ2d at 1722.

Serial No. 97354145

To demonstrate relatedness, the Examining Attorney submitted Internet printouts showing that "retail store services featuring convenience store items," "retail store services in the nature of truck stops, travel centers and fuel stops featuring fuel" and "retail convenience stores," such as those identified in the cited registration, commonly offer at the same location and under the same mark electric vehicle charging and refueling services such as those identified in the application. Examples include: Casey's, Royal Farms, Wawa, Love's, Sheetz, Pilot and Shell,[3] April 18, 2023 Final Office Action, TSDR 15-123, as well as BP and Circle K. August 29, 2023 Request for Reconsideration Denied, TSDR 58-105.

Additional Internet printouts show that the same companies commonly offer at the same location and under the same mark "retail store services in the nature of … fuel stops featuring fuel" such as those identified in the cited registration, and "rubber tire repair services" such as those identified in the application. Examples include: Smiths's Chevron, Bon Air Shell, and Eli's Service Station, April 18, 2023 Final Office Action, TSDR 125-143, as well as Bayside Tire and Auto Center, Bledsoe's, Bob Lee's Tire Pros, Harbor Springs Car Care, Harhart's Service Station, Milito's Gas Station, Needham Service Center, and Seversin's Auto Service Center. August 29, 2023 Request for Reconsideration Denied, TSDR 225-276, 281-336.

Evidence showing that the involved services are offered by companies under the same mark supports a finding of relatedness. *See, e.g., Detroit Ath. Co.*, 128 USPQ2d

---

[3] Additional evidence from the Shell website showing Shell gas stations also offer EV charging stations is attached to the August 29, 2023 Request for Reconsideration Denied, TSDR 106-121.

Serial No. 97354145

at 1050 (crediting relatedness evidence showing that third parties use the same mark for the goods and services); *Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *46 (TTAB 2022) (third-party websites promoting sale of both parties' goods showed relatedness).

In sum, we find the evidence amply demonstrates that the electric vehicle charging and refueling services identified in the application are related to the "retail store services featuring convenience store items," "retail store services in the nature of truck stops, travel centers and fuel stops featuring fuel" and "retail convenience stores" identified in the cited registration, and that the "rubber tire repair" services identified in the application are related to the "retail store services in the nature of … fuel stops featuring fuel" identified in the cited registration. Thus, the second *DuPont* factor supports a finding of a likelihood of confusion.

  2. Similarity or Dissimilarity of Trade Channels

Pointing to Registrant's website, Applicant argues confusion is unlikely because Registrant's "services relate to providing fuel and food: E10, 87 Octane, 89 Octane, 92 or 93 octane and diesel," while

> Applicant's services are intended to be performed to electric vehicle holders, that have different needs than a gas vehicle holder. In other words, Applicant's consumers will be holders of an electric vehicle and will require electricity to charge their batteries. The same purchaser will know the difference between gasoline, diesel and an electric charger. Moreover, the fact that convenience stores are closer or in close proximity to a gas station, this proximity is not conclusive that consumers will confused [sic] the source of the goods and the emanation of the services.

6 TTABVUE 14-15.

Serial No. 97354145

We remind Applicant that our determination under this *DuPont* factor is based on the descriptions of services in the application and cited registration, not on extrinsic evidence of actual use. *i.am.symbolic,* 123 USPQ2d at 1749-50. In other words, an applicant may not restrict the scope of the services covered in its application or the cited registration by argument or by extrinsic evidence. *Stone Lion,* 110 USPQ2d at 1162 ("It was proper, however, for the Board to focus on the application and registrations rather than on real-world conditions …."); *Octocom Sys. Inc. v. Hous. Comput. Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed."). Accordingly, Applicant's arguments about the "real world" channels of trade and classes of purchasers are inapposite.

Because the identifications of services in the application and cited registration contain no limitations as to channels of trade and classes of purchasers, it is presumed that the respective identified services move in all channels of trade normal for those services, and that they are available to all usual classes of purchasers for those services, who are members of the general public and would include drivers who need to refuel/recharge their motor vehicles. *See Stone Lion*, 110 USPQ2d at 1161; *see also Coach Servs.*, 101 USPQ2d at 1723 (absent limitation, "goods are presumed

to travel in all normal channels … for the relevant goods."); *In re Linkvest S.A.,* 24 USPQ2d 1716, 1716 (TTAB 1992).

As neither the application nor the cited registration contains limitations as to the channels of trade or classes of purchasers, and in light of the above-discussed evidence of third party commercial websites showing that companies such as Royal Farms, Sheetz, Shell, BP, Smith's Chevron and Blesdoe's offer electric vehicle charging and refueling services and/or rubber tire repair services at the same location as retail store services featuring convenience store items, retail store services in the nature of truck stops, travel centers and fuel stops featuring fuel, and/or retail convenience stores, we find the channels of trade and classes of purchasers to be the same for the services identified in the application and cited registration. *See In re Anderson*, 101 USPQ2d 1912, 1920 (TTAB 2012); *see also In re Thomas*, 79 USPQ2d 1021, 1023 (TTAB 2006) (deeming channels of trade and classes of purchasers to be the same for jewelry and jewelry stores when the application and registration contain no limitations).

Evidence from the Lexis/Nexis database of a sampling of U.S. publications showing gas stations and convenience stores featuring gasoline commonly offer electric vehicle charging refueling services at the same locations bolsters this finding. August 29, 2023 Request for Reconsideration Denied, TSDR 122-180. *See Charger Ventures*, 2023 USPQ2d 451, at *3, 5-6 ("Because the record shows that companies are known to offer both residential and commercial services under the same mark and, often, on the same website, we find that substantial evidence supports the

Serial No. 97354145

Board's finding[s]" that they are related and that there is "some overlap" in trade channels).

The record demonstrates that it is common for services of the types identified in the application and cited registration to be offered by the same companies at the same locations, where they will be encountered by the same consumers. The third *DuPont* factor therefore supports a finding of likely confusion.

### 3. Purchasing Conditions

Next, we consider the fourth *DuPont* factor, the conditions under which the services are likely to be purchased, e.g., whether on impulse or after careful consideration, as well as the degree, if any, of sophistication of the consumers. A heightened degree of care when making a purchasing decision may tend to minimize likelihood of confusion. *See, e.g., In re N.A.D., Inc.*, 754 F.2d 996, 224 USPQ 969, 971 (Fed. Cir. 1985) (because only sophisticated purchasers exercising great care would purchase the relevant goods, there would be no likelihood of confusion merely because of the similarity between the marks NARCO and NARKOMED). Conversely, impulse purchases of inexpensive services may tend to have the opposite effect. *Palm Bay Imps.,* 73 USPQ2d at 1695. We reiterate that we must consider the conditions of sale based on the identifications of services in the application and cited registration. *Stone Lion,* 110 USPQ2d at 1161-62 (quoting *Octocom*, 16 USPQ2d, at 1787). Accordingly, Applicant's arguments concerning purchasing conditions and consumer sophistication pertaining to electric vehicles, 6 TTABVUE 15-17, rather than the services identified in the application and cited registration, are unavailing.

Here, neither the application nor cited registration contains restrictions as to purchaser or price. We therefore must presume that the services identified in the application and cited registration are available to all drivers at all possible price points. Inasmuch as all vehicles need to refuel or recharge, the consumers of the involved services include owners and drivers of virtually any vehicle. When relevant consumers include both discerning purchasers and less sophisticated consumers, precedent requires that we base our decision on the least sophisticated potential purchasers. *Stone Lion*, 110 USPQ2d at 1163. Moreover, it is settled that even sophisticated purchasers are not immune from source confusion, especially where the marks are identical. *See In re Rsch. Trading Corp.*, 793 F.2d 1276, 230 USPQ 49, 50 (Fed. Cir. 1986) (citing *Carlisle Chem. Works, Inc. v. Hardman & Holden Ltd.*, 434 F.2d 1403, 168 USPQ 110, 112 (CCPA 1970) ("Human memories even of discriminating purchasers … are not infallible.")).

The fourth *DuPont* factor is neutral.

C.  Conclusion

The marks are identical, the Refused Services are related to the services identified in the cited registration, and they are sold to the same classes of purchasers in the same trade channels. Accordingly, the first, second and third *DuPont* factors weigh in favor of a finding of likelihood of confusion, with the first *DuPont* factor weighing heavily so. The fourth *DuPont* factor is neutral, and no *DuPont* factor weighs against a finding of likelihood of confusion.

We therefore conclude confusion is likely between Applicant's mark ONVO and the identical cited registered mark ONVO (Reg. No. 6502747) when the marks are used in association with their respective identified services.

**Decision**: The partial refusal to register Applicant's mark under Trademark Act Section 2(d) is affirmed as to the Refused Services.

The application will proceed solely as to the identified "Electric vehicle service station for maintenance of electric vehicles" in Class 37.

FORM 5. Petition for Review/Notice of Appeal of an Order or Decision of an Agency, Board, Commission, Office, Bureau, or the US Court of Federal Claims (vaccine appeals only))     Form 5 March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## PETITION FOR REVIEW/NOTICE OF APPEAL

Notice is hereby given that the petitioner(s)/appellant(s) listed below hereby appeal(s) the below-noted case to the United States Court of Appeals for the Federal Circuit.

Originating Tribunal *(Name of Agency, Board, Commission, Office, Bureau, or Court whose decision is being appealed)*:    Trademark Trial and Appeal Board

Case number being appealed:    97354145

Case title being appealed:    In re Nio Co., LTD Serial No. 97354145

Date of final decision or order being appealed:    06/28/2024

Date decision or order was received:    06/28/2024

▣ I have attached a copy of the decision or order being appealed.

**List all Petitioners/Appellants** (List each party filing this appeal. Do not use "et al." or other abbreviations. Attach continuation pages if necessary.)

Nio Co., LTD

Date: 08/25/2024

Signature: /s/ Roman Campos

Name: Roman Campos

Address: 125 S. Royal St.

Alexandria, VA 22314

MUNCY, GEISSLER, OLDS & LOWE, P.C.

Phone Number: (703) 621-7140 Ext. 271

Email Address: arc@mg-ip.com