**2024-2262**

# United States Court of Appeals for the Federal Circuit

In re: NIO CO., LTD.

*Appellant,*

*On Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 97354145*

## BRIEF OF APPELLANT

ANGEL ROMAN CAMPOS
REBECCAH L. GAN
MUNCY, GEISSLER, OLDS & LOWE
125 South Royal Street
Alexandria, Virginia 22314
(703) 621-7140
arc@mg-ip.com
rgan@mg-ip.com

*Counsel for Appellant*

NOVEMBER 12, 2024

CP COUNSEL PRESS     (800) 4-APPEAL • (130637)

**FORM 9. Certificate of Interest**

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 24-2262 |
| **Short Case Caption** | In re: Nio Co., LTD |
| **Filing Party/Entity** | Nio Co., LTD |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/09/2024

Signature: /s/ Roman Campos

Name: Roman Campos

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. <br><br> ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. <br><br> ☑ None/Not Applicable |
| Nio Co., LTD. | | Nio NextEV Limited |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................i

TABLE OF AUTHORITIES ................................................. iii

STATEMENT OF RELATED CASES .................................. vi

  I.   Statement of Jurisdiction .................................................1

  II.    Statement of the Issues ...............................................1

  III.   Statement of the Case .................................................1

  IV.   Statement of the Facts .................................................5

  V.   Summary of the Argument..........................................7

  VI.   Argument.....................................................................7

    A.  Standard of Review ...............................................7

    B.   The Parties' Goods and Trade Channels are Disparate...........................8

    I.   Unrelated Nature of Services and Goods ...............................10

    II.   Sophistication of Purchasers.................................................12

    III. Conditions Under Which Purchases Are Made........................14

    IV. Distinct Trade Channels ....................................................15

  VII.   Conclusion and Relief Sought.................................17

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

## <u>TABLE OF AUTHORITIES</u>

<u>**CASES**</u> <u>**Pages(s)**</u>

*AutoZone, Inc. and Speedbar, Inc. v. TandyCorp.*,
    373 F.3d 786 (6th Cir. 2004)……………………………………………16

*In re Bayer Aktiengesellschaft*,
    488 F.3d 960 (Fed. Cir. 2007)…………………………………….....7

*In re Chatam Int'l Inc.*,
    380 F.3d 1340 (Fed. Cir. 2004)………………………..……….....7

*Checkpoint Systems v. Check Point Software Technologies*, Inc.,
    269 F.3d 270 (3d Cir. 2001)………………………………………..10

*Consol. Edison Co. v. N.L.R.B.*,
    305 U.S. 197 (1938)………………………………………………7-8

*DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*,
    695 F.3d 1247 (Fed. Cir. 2012)……………….....................................7

*In re E.I. du Pont de Nemours & Co.*,
    476 F.2d 1357, 177 USPQ 563 (CCPA 1973)……………......……………14

*Franklin Mint Corp. v. Master Mfg. Co.*,
    212 U.S.P.Q. 233 (C.C.P.A. 1981)……………………………….....15

*Herbko Int'l, Inc. v. Kappa Books, Inc.*,
    4 USPQ2d 1375 (Fed. Cir. 2002)…………………………..…..………8

*In re Hughes Aircraft Company*,
    222 USPQ 263 (TTAB 1984)…………………………………..13-14

*McGraw-Hill Inc. v. Comstock Partners Inc.*,
    743 F. Supp. 1029 (S.D.N.Y. 1990)…………………………………11-12

*In re N.A.D., Inc.*,
    754 F.2d 996 (Fed. Cir. 1985)…………….…………………………13

*Pep Boys-Manny, Moe & Jack v. Edwin F. Guth Co.*,
    94 USPQ 158 (CCPA 1952)……………..…………………………..………11

*Quartz Radiation Corp. v. Comm/Scope Co.*,
    1 USPQ2d 1668 (TTAB 1986)………………………………..……….....9

*Recot Inc. v. M.C. Becton*,
    54 USPQ2d 1894 (Fed. Cir. 2000)……………………..…………… 11, 16

*Safety-Kleen Corp. v. Dresser Indus., Inc.*,
    186 USPQ 476 (CCPA 1975)…………………….…..……………..…..9

*In re Shell Oil Co.*,
    992 F.2d 1204 (Fed. Cir. 1993)…………………………………………13

*Shen Mfg. Co. v. Ritz Hotel Ltd.*,
    73 USPQ2d 1350 (Fed. Cir. 2004)………………………………….....8-9

*In re Shipp*,
    4 USPQ2d 1174 (TTAB 1987)……………………………..……..………8

*In re St. Helena Hospital*,
    113 USPQ2d 1082 (Fed. Cir. 2014)…………………………………7, 8

*Stone Lion Capital Partners, LP v. Lion Capital LLP*,
    110 USPQ2d 1157 (Fed. Cir. 2014)…………………….……...15-16

*In re White Rock Distilleries Inc.*,
    92 USPQ2d 1282 (TTAB 2009)…………..………..……………….8-9

## <u>STATUTES</u>

15 U.S.C. § 1070……………………………………………………………... 1

15 U.S.C. § 1071(a)………………………………………………………... 1

28 U.S.C. § 1295(a)(4)(B)………………………………………………………1

Trademark Act § 2(d) (15 U.S.C. § 1052(d))……………..…......………  1, 2, 4, 17

## <u>RULES</u>

Fed Cir. R. 47.5 ..……………………………………………………………...…..ix

## **STATEMENT OF RELATED CASES**

Pursuant to Federal Circuit Rule 47.5, Appellant states that there is no other appeal in connection with this case that has previously been before this Court or is currently pending in any other court. Counsel is unaware of any related cases pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in the pending appeal.

## I.     Statement of Jurisdiction

The Trademark Trial and Appeal Board ("Board") had jurisdiction under 15 U.S.C. § 1070. This Court has jurisdiction under 15 U.S.C. § 1071(a) and 28 U.S.C. § 1295(a)(4)(B) over the present appeal from the Final Decision on Appeal dated June 28, 2024, by the Board, which affirmed the Examining Attorney's partial refusal to register the mark ONVO in connection with "electric vehicle battery charging service; Electric vehicle service station for refueling of electric vehicles; rubber tire repair."

## II.     Statement of the Issues

Whether the Trademark Trial and Appeal Board erred in finding that there is a likelihood of confusion with Appellant's mark ONVO and the cited registered mark ONVO under Section 2(d) of the Trademark Act.

Whether the Trademark Trial and Appeal Board improperly evaluated the relatedness of the services and the channels of trade in relation to the marks at issue.

## III.     Statement of the Case

Appellant Nio Co., Ltd. (hereinafter "Nio") seeks to register its mark ONVO in connection with "Electric vehicle battery charging service; car maintenance and repair for electric vehicles; electric vehicle service station for refueling and maintenance of electric vehicles; carrier maintenance service in the nature of maintenance of electric motor vehicles; delivery electric vehicle repair services;

1

repair and maintenance of electric vehicles; auto body repair services; customized installation of car interiors; building construction information; construction equipment rental; mining extraction services; upholstery repairs; heating equipment installation and repair; mechanical installation, maintenance and repair, namely, the installation, maintenance, and repair of electric vehicles; furniture maintenance; disinfection of surgical instruments, furniture, electric vehicles; installation and repair of antitheft alarm system; eliminate interference from electronic devices in the nature of interference suppression services for electronic devices; installation and repair of medical equipment; watch repair; anti-rust services, namely, anti-rust treatment of vehicles; rubber tire repair; leather care, cleaning and repair" in International Class 37. On February 7, 2023, the Examining Attorney issued a non-final office action partially refusing the registration of Appellant's mark under Section 2 (d) of the Trademark Act, 15 U.S.C. § 1052(d), while also requiring the Appellant amend its identification to be more definite and provide the Chinese registration. The Examining Attorney asserted that the mark, when used in connection with certain identified services, was likely to be confused with the registrations held by Liberty Truck Center, Inc. The refusal specifically referenced the following services: "motor vehicle charging service; vehicle battery charging service; electric vehicle charging service; car maintenance and repair; vehicle service station (refueling and maintenance); carrier maintenance service; delivery

2

vehicle repair service; repair and maintenance of electric vehicles; rubber tire repair."

On February 24, 2023, Appellant responded to the Examiner's Office Action, amending its services in Class 37 to narrow the services they conduct in connection with "electric vehicles." Appellant argued that there is no likelihood of confusion between Nio's ONVO mark and the cited registrations, asserting that: (1) the respective parties' goods are not sufficiently related; (2) the parties' goods and services are marketed to different types of purchasers; (3) the purchasers of Appellant's services are highly sophisticated; and (4) the parties' goods and services travel through different trade channels. Appellant narrowed its identification to further differentiate its services from those in the Liberty registrations.

On April 18, 2023, the Examining Attorney withdrew some previously refused services but retained the partial refusal to specific services: "Electric vehicle battery charging service; Electric vehicle service station for refueling and maintenance of electric vehicles; Rubber tire repair." Appx183-328.

On May 18, 2023, Appellant requested to divide the conflicting services out of the refused application. Subsequently, in a request for reconsideration filed on May 24, 2023 (the "May 2023 Request"), Appellant requested that the Examining Attorney reconsider the partial refusal. Appellant argued that there is no per se rule that a likelihood of confusion is ipso facto presented when two marks share certain

3

wording. Importantly, Appellant reiterated that the sophistication of the relevant consumers and the distinct nature of the services involved sufficiently mitigated any potential confusion. Concurrently, Appellant filed a Notice of Appeal on the same day.

The Examining Attorney denied Appellant's request for reconsideration on August 29, 2023 (the "August 2023 Reconsideration Denied"), withdrawing the refusal for "electric vehicle service station for maintenance of electric vehicles," while maintaining the partial refusal concerning "electric vehicle battery charging service; electric vehicle service station for refueling and maintenance of electric vehicles; rubber tire repair."

The Trademark Trial and Appeal Board subsequently issued a final decision affirming the partial refusal to register Appellant's mark under Section 2(d) of the Trademark Act, allowing the application to proceed to registration solely for the identified "electric vehicle service station for maintenance of electric vehicles" in Class 37.

A Notice of Appeal for the present appeal was timely filed on August 25th, 2024. Appx343.

#### IV.   Statement of the Facts

Appellant, Nio Co., Ltd. ("Nio"), is a pioneer in the global smart electric vehicle market. Founded in November 2014, Nio aspires to shape a sustainable and brighter future with the mission of "Blue Sky Coming." The company envisions itself as a user enterprise where innovative technology meets excellence in experience. Nio designs, develops, manufactures, and sells smart electric vehicles, driving innovations in next-generation core technologies.

Nio distinguishes itself through continuous technological breakthroughs, exceptional products and services, and a community focused on shared growth. The company provides premium smart electric vehicles under the Nio brand and family-oriented smart electric vehicles through its ONVO brand. Nio Inc. (Chinese: 蔚来; pinyin: Wèilái; stylized as NIO) is a Chinese multinational automobile manufacturer headquartered in Shanghai, specializing in designing and developing electric vehicles. Established in 2014, the company adopted its current name in 2016 and filed for an initial public offering on the New York Stock Exchange in 2018. Nio expanded its sales to the European market in 2021, demonstrating its commitment to global growth.

As of 2023, Nio operates two manufacturing plants in Hefei, Anhui Province, China, in collaboration with the state-owned vehicle manufacturer JAC Group.

Notably, Nio has developed and operates over 1,300 battery-swapping stations in China, providing an alternative to conventional charging stations, and is at the forefront of developing semi-autonomous and autonomous vehicle technologies.

Nio has been an integral part of the electric vehicle market for years and owns several registered trademarks in the United States, including the NIO ES6 (U.S. Reg. 7003181), NIO ES8 (U.S. Reg. 7003180), and NIO (U.S. Reg. 7008677), among others. These trademarks represent the company's commitment to innovation and its established presence in the electric vehicle sector.

Since its inception, Nio has participated in Formula E racing and has launched several electric vehicle models. Its first car, the Nio EP9 electric hypercar, was unveiled on the same day the brand was launched. Subsequent releases include the ES8, a seven-seater electric SUV introduced in December 2017, with deliveries commencing in June 2018; the ES6, a five-seater electric SUV launched in December 2018; the EC6, a five-seater electric coupe SUV launched in December 2019; and the ET7 electric sedan revealed in January 2021, along with the ET5 compact sedan presented at Nio Day in December 2021.

In 2024, Nio established a new electric car brand called Onvo, targeting the mainstream market, further solidifying its commitment to innovation and expansion within the electric vehicle sector. Appx344-348.

6

## V.    Summary of the Argument

Appellant's electric vehicle charging and refueling service, as well as rubber tire repair services, are clearly unrelated to the services identified in the cited registration, such as convenience stores and fuel stops. The Examining Attorney's decision is flawed, as it fails to account for the distinct nature of these services, which cater to entirely different consumer bases with specific needs. Electric vehicle owners seek out specialized charging infrastructure, while traditional fuel consumers prioritize gasoline or diesel refueling. Furthermore, the decision does not adequately consider the growing consumer awareness of these differences, nor the fact that consumers are increasingly discerning when it comes to distinguishing between electric vehicle services and traditional fuel offerings. Additionally, the decision overlooks the sophistication of electric vehicle owners, who are less likely to confuse these services with conventional fuel stops.

## VI.    Argument

### A.    Standard of Review

The determination of whether an applied-for mark presents a likelihood of confusion with a given registered mark is a question of fact. *In re Chatam Int'l Inc.*, 380 F.3d 1340, 1342 (Fed. Cir. 2004). The Examining Attorney had the burden of establishing likely consumer confusion. *See In re St. Helena Hospital*, 113 USPQ2d 1082 (Fed. Cir. 2014). The Federal Circuit reviews the Board's factual findings for

7

substantial evidence. *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1252 (Fed. Cir. 2012); *In re Bayer Aktiengesellschaft,* 488 F.3d 960, 964 (Fed. Cir. 2007). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 964; *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938).

**B.    The Parties' Goods and Trade Channels are Disparate**

A likelihood of confusion analysis involves a comparison of the parties' goods to determine whether they are similar, or commercially related, or travel in the same trade channels. *See Herbko lnt'l, Inc. v. Kappa Books, Inc.,* 4 USPQ2d 1375, 1380 (Fed. Cir. 2002). Where the goods of the Appellant and Registrant are different, the Examining Attorney bears the burden of showing that Appellant's and Registrant's different goods would commonly be provided by the same source. *In re St. Helena Hospital*, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014) (precedential) (Board erred in affirming refusal where there was no evidence of "something more" than products are complementary because they are used together, and the fact that products are both offered online is insufficient for finding relatedness of parties' goods and/or services); *In re Shipp*, 4 USPQ2d 1174, 1176 (TTAB 1987) (reversing refusal due to lack of proof of trade practices and failure to show likelihood, rather than possibility, of confusion); *In re White Rock Distilleries Inc.,* 92 USPQ2d 1282, 1285 (TTAB 2009) (reversing refusal due to lack of proof that parties' goods emanate from a

single source under a single mark, or that such goods are complementary products that would be bought and used together). If the goods or services in question are not related or marketed in such a way that they would be encountered by the same persons in situations that would create the incorrect assumption that they originate from the same source, then, even if the marks are identical, confusion is not likely. *Shen Mfg. Co. v. Ritz Hotel Ltd.,* 73 USPQ2d 1350, 1356 (Fed. Cir. 2004) (reversing Board's holding that contemporaneous use of RITZ for cooking and wine selection classes and RITZ for kitchen textiles is likely to cause confusion, because the relatedness of the respective goods and services was not supported by substantial evidence); *Quartz Radiation Corp. v. Comm/Scope Co.,* 1 USPQ2d 1668, 1669 (TTAB 1986) (holding QR for coaxial cable and QR for various apparatus used in connection with photocopying, drafting, and blueprint machines not likely to cause confusion, because of the differences between the parties' respective goods in terms of their nature and purpose, how they are promoted, and who they are purchased by). When analyzing the relatedness of the goods, the issue is not whether the goods will be confused with each other, but whether the public will be confused about their source or origin. *See Safety-Kleen Corp. v. Dresser Indus., Inc.*, 518 F.2d 1399, 186 USPQ 476, 480 (CCPA 1975).

## I.     Unrelated Nature of Services and Goods

There is no per se rule that services in the automotive or energy sectors must be related such that a likelihood of confusion arises from the use of similar marks. The determination of whether goods or services are related must be based on an in-depth analysis of the nature and purpose of the services, as well as the context in which they are offered to consumers. In this case, the electric vehicle services provided by Appellant and the traditional fuel services offered by the registrant are fundamentally distinct. Nio's services—electric vehicle battery charging, refueling of electric vehicles, and rubber tire repair—are specifically tailored to the electric vehicle market, which is distinct from the traditional fuel services offered by the registrant. The TTAB and Examining Attorney failed to account for the differentiated nature of these services, overlooking their specialized purposes and the distinct consumer bases they serve. Appx86-90.

Courts have regularly rejected the assumption that goods or services are related solely because they belong to the same broad category. For instance, in *Checkpoint Systems v. Check Point Software Technologies*, Inc., 269 F.3d 270 (3d Cir. 2001), the court found no likelihood of confusion between security-related products because the parties operated in distinct niches. Likewise, the services here, while generally related to vehicle maintenance, operate in clearly differentiated markets: electric vehicle services on one hand and gasoline and diesel refueling

services on the other. Electric vehicle owners seek specialized services that cater to their distinct needs, while gasoline and diesel consumers rely on traditional refueling infrastructure.

The evidence presented by the Examining Attorney—that companies like Royal Farms, Sheetz, and BP offer both electric and gasoline services at the same locations—fails to establish that the services are related from the perspective of consumers. As held in *Pep Boys-Manny, Moe & Jack v. Edwin F. Guth Co.*, 197 F.2d 527, 94 USPQ 158 (CCPA 1952), co-location of services does not automatically imply relatedness, particularly where the nature of the services and the consumers they target are vastly different. In *Pep,* the court made clear that co-location of services does not imply confusion unless consumers would perceive the services as coming from the same source. The mere proximity of electric vehicle charging stations and gas pumps for convenience does not lead to a likelihood of confusion, especially given the distinct consumer bases and service needs. Appx198-212. In sum, merely offering these services under the same roof for convenience does not mean that consumers will perceive them as originating from the same source.

The court's reasoning in *Recot Inc. v. M.C. Becton,* 54 USPQ2d 1894 (Fed. Cir. 2000) is instructive here. The Federal Circuit stated that goods should not be deemed related simply because they are sold in the same types of establishments. Rather, the goods must be closely related and sold in close proximity for confusion

11

to arise. In this case, the distinct consumer bases for electric vehicle services and gasoline services ensure that confusion is unlikely, despite the physical proximity of the services.

Additionally, as noted in *McGraw-Hill Inc. v. Comstock Partners Inc.*, 743 F. Supp. 1029 (S.D.N.Y. 1990), confusion cannot be assumed based on broad categorizations. The case law firmly establishes that merely offering services in proximity or under broad categories does not suffice to establish confusion, especially when the nature and scope of the services diverge significantly. In this case, electric vehicle services cater to high-tech, environmentally conscious consumers, while traditional fuel services are marketed to daily drivers using gasoline or diesel vehicles.

Thus, the unrelated nature of the services, combined with the different consumer segments, weighs heavily against a finding of a likelihood of confusion.

## II.    Sophistication of Purchasers

The sophistication of the relevant consumers is a key factor in the DuPont analysis, particularly in cases where specialized services are involved. Consumers of electric vehicle services, such as battery charging and electric refueling, represent a highly sophisticated and informed demographic. The electric vehicle market targets affluent, technologically savvy consumers who are well-versed in the specific requirements of their vehicles, including charging infrastructure, maintenance, and

12

tire repairs tailored for electric vehicles. This degree of care and sophistication substantially reduces the likelihood that such consumers would confuse electric vehicle services with gasoline refueling services. Appx72-85.

These consumers are generally aware of the technology behind their vehicles, and they approach their purchasing decisions with significant care and attention to detail. In *In re N.A.D., Inc.*, 754 F.2d 996, 999–1000 (Fed. Cir. 1985), the court concluded that sophisticated purchasers, who exercise great care in their purchasing decisions, are less likely to be confused by similar marks, particularly when the products or services are marketed to distinct segments of the population. Here, electric vehicle owners, who plan their charging needs in advance and rely on specialized apps or services, are highly unlikely to confuse these services with those offered to traditional vehicle owners.

Appellant's services target electric vehicle owners, a group of consumers who are typically knowledgeable about their specific vehicle needs and the technology required for maintenance and refueling. This high degree of sophistication reduces the likelihood that they would mistake gasoline or diesel services for electric vehicle services, even if offered under a similar mark. In contrast, registrant's services— traditional refueling and convenience store offerings—target a broader, less specialized market segment. As the court emphasized *In re Shell Oil Co.*, 992 F.2d

1204 (Fed. Cir. 1993), the degree of care exercised by the purchasers must be weighed appropriately when evaluating the likelihood of confusion.

Even the Examining Attorney's reliance on the fact that some companies offer both gasoline and electric services does not undermine this argument. The Federal Circuit has repeatedly held that consumer sophistication can mitigate the likelihood of confusion, even in cases where services may overlap. See *In re Hughes Aircraft Company*, 222 USPQ 263 (TTAB 1984). Here, the highly specialized nature of electric vehicle services ensures that purchasers will exercise significant care in their selection, further reducing the possibility of confusion.

## III.    Conditions Under Which Purchases Are Made

The conditions under which purchases are made also diminish the likelihood of confusion in this case. The fourth DuPont factor considers whether the sales are made to impulse buyers or to sophisticated consumers who carefully evaluate their options before making a purchase. In *re E.I. DuPont de Nemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A. 1973), the court emphasized that the level of care exercised by consumers in making purchasing decisions can significantly impact the likelihood of confusion.

Appellant's services, such as electric vehicle battery charging and refueling, are not purchased on impulse. Rather, electric vehicle owners plan their charging needs in advance, and they consider factors such as charging speed, technology

14

compatibility, and location when selecting a charging station. These considerations demand a higher level of scrutiny, making confusion with traditional gasoline services unlikely.

In contrast, the registrant's services, which include gasoline, diesel, and convenience store items, are often purchased impulsively and with minimal deliberation. The stark difference in purchasing behavior between consumers of electric vehicle services and traditional fuel services further reduces the likelihood that these consumers would be confused by the use of similar marks. The distinct nature of the purchasing process, and the different consumer expectations for electric vehicle services versus traditional fuel services, makes confusion between the marks highly improbable.

The court in *Franklin Mint Corp. v. Master Mfg. Co.,* 212 U.S.P.Q. 233 (C.C.P.A. 1981) similarly found that confusion was unlikely when goods were purchased after careful consideration. Here, electric vehicle owners, who typically make informed decisions regarding their vehicle's maintenance and charging needs, are unlikely to conflate the two types of services offered under similar marks.

## IV.    Distinct Trade Channels

The third DuPont factor, which focuses on the similarity or dissimilarity of trade channels, also weighs against a finding of confusion. Appellant's services are offered through dedicated electric vehicle charging stations, which are often found

at specialized service centers designed for environmentally conscious consumers. These trade channels are distinct from the registrant's gasoline and diesel service stations, which cater to drivers of internal combustion engine vehicles.

In *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 110 U.S.P.Q.2d 1157 (Fed. Cir. 2014), the court held that differences in trade channels are significant in reducing the likelihood of confusion. Similarly, in this case, the trade channels for electric vehicle services and traditional fuel services are markedly different, further reducing the possibility that consumers will confuse the two.

The Examining Attorney's argument that both types of services may be offered at the same physical location (e.g., a service station that provides both gasoline and electric charging) fails to account for the segregated nature of these services. As noted in *AutoZone, Inc. and Speedbar, Inc. v. TandyCorp.*, 373 F.3d 786 (6th Cir. 2004), the concept of a "store within a store" or segregated point of purchase displays is common in many industries, allowing different services or products to be offered in close proximity without causing consumer confusion. The physical separation of electric vehicle charging stations from traditional gasoline pumps within the same service center ensures that consumers understand they are accessing different services.

Moreover, as the court noted in *Recot Inc. v. M.C. Becton, 54 USPQ2d 1894* (Fed. Cir. 2000), goods or services should not be deemed related simply because they

are offered in the same kind of establishments. There must be more substantive evidence showing that consumers encounter both types of services in a way that would create confusion. The TTAB erred in failing to sufficiently differentiate between the high-tech electric vehicle market and the conventional gasoline service market.

## VII.   Conclusion and Relief Sought

In summary, Appellant submits that the Examining Attorney erred in finding that consumer confusion is likely. The services provided by the Appellant—electric vehicle charging, refueling, and rubber tire repair—are clearly distinct from the convenience store and fuel stop services identified in the cited registration. The subject services cater to different consumer bases with unique needs, and consumers today are increasingly sophisticated and aware of the differences between electric vehicle services and traditional fuel offerings. Moreover, the marketing strategies and trade channels for these services diverge significantly, further reducing the potential for confusion.

Given the distinct nature of these services, the consumer differentiation, and the increasing specialization of trade channels, Appellant submits that no likelihood of confusion exists between the parties' marks. Accordingly, Appellant respectfully

requests that the Court REVERSE the Examining Attorney's partial refusal to register the subject applied-for mark under Section 2(d) of the Trademark Act.

Dated: November 12, 2024

Respectfully submitted,

/s/ *Roman Campos*

Angel Roman Campos, Esquire
*Counsel for Appellant*

MUNCY, GEISSLER, OLDS & LOWE, PC
125 S. Royal St., Alexandria, VA 22314
Telephone: (703) 621-7140
Email: arc@mg-ip.com;
mailroom@mg-ip.com

**<u>ADDENDUM</u>**

# **TABLE OF CONTENTS**

**Addendum Page(s)**

Trademark Trial and Appeal Board Decision………………………….    Appx1-13

> This Opinion is Not a
> Precedent of the TTAB

Mailed: June 28, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Nio Co., LTD*

Serial No. 97354145

_____

Roman Campos, Joe McKinney Muncy, P. Jay Hines and Leo V. Gureff
    of Muncy, Geissler, Olds & Lowe, PC, for Nio Co., LTD.

Brendan Quilici, Trademark Examining Attorney, Law Office 123,
    Susan Hayash, Managing Attorney.

_____

Before Cataldo, Greenbaum and Larkin,
    Administrative Trademark Judges.

Opinion by Greenbaum, Administrative Trademark Judge:

Nio Co., LTD. ("Applicant") seeks registration on the Principal Register of the

standard character mark ONVO for

> Electric vehicle battery charging service; Electric vehicle
> service station for refueling and maintenance of electric
> vehicles; Rubber tire repair, in International Class 37.[1]

---

[1] Application Serial No. 97354145, filed April 8, 2022 under Trademark Act Sections 1(b) and
44(d), 15 U.S.C. §§ 1051(b) and 1126(d), based on Applicant's allegation of a bona fide
intention to use the mark in commerce and claiming a priority date of October 12, 2021 based
on the filing date of Applicant's China Application No. 59749546. During prosecution,
Applicant perfected the Section 44(d) filing basis to Trademark Act Section 44(e), 15 U.S.C.
§ 1126(e), based on China Registration No. 59749546, issued April 7, 2022. March 20, 2023
Preliminary Amendment.

Serial No. 97354145

The Trademark Examining Attorney partially finally refused registration of the mark under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d) only as to the services identified as "Electric vehicle battery charging service; Electric vehicle service station for refueling of electric vehicles; Rubber tire repair" ("Refused Services"), on the ground that Applicant's mark, when used on or in connection with the Refused Services, so resembles the mark ONVO in standard characters and with design, displayed as , both owned by a single registrant ("Registrant") and registered on the Principal Register for

> Retail store services featuring convenience store items, gasoline, diesel fuel, truck driver amenities in the nature of souvenirs, laundry soap, video games, and truck supplies in the nature of motor oil, floor mats, air fresheners; retail store services in the nature of truck stops, travel centers and fuel stops featuring fuel; retail convenience stores, in International Class 35,

as to be likely to cause confusion, mistake or deception.[2]

When the partial refusal was made final, Applicant requested reconsideration and appealed to this Board. Reconsideration was denied, proceedings were resumed, and Applicant and the Examining Attorney filed briefs. We affirm.

---

[2] Reg. No. 6502747 (standard characters) issued September 28, 2021.

Reg. No. 6364493 (design) issued May 25, 2021, and describes the mark as follows: "The mark consists of the term 'ONVO,' and on top of the last letter sits a characterization of a bird, perched, facing forward with large opened eyes and small beak." Color is not claimed as a feature of the mark.

The partial refusal does not apply to the identified "Electric vehicle service station for maintenance of electric vehicles."

- 2 -

Serial No. 97354145

## I.    Likelihood of Confusion

"The Trademark Act prohibits registration of a mark that so resembles a registered mark as to be likely, when used on or in connection with the goods or services of the applicant, to cause confusion [or] mistake, or to deceive." *In re Charger Ventures LLC*, 64 F.4th 1375, 2023 USPQ2d 451, at *2 (Fed. Cir. 2023) (cleaned up).

Our determination under Trademark Act Section 2(d) involves an analysis of all of the probative evidence of record bearing on a likelihood of confusion. *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973) (setting forth factors to be considered, hereinafter referred to as "*DuPont* factors"); *see also In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). We consider each *DuPont* factor for which there is evidence and argument. *See, e.g., In re Guild Mortg. Co.,* 912 F.3d 1376, 129 USPQ2d 1160, 1162-63 (Fed. Cir. 2019); *see also In re i.am.symbolic, llc*, 866 F.3d 1315, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017) ("The likelihood of confusion analysis considers all *DuPont* factors for which there is record evidence but 'may focus … on dispositive factors, such as similarity of the marks and relatedness of the goods.'") (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)).

Varying weights may be assigned to each *DuPont* factor depending on the evidence presented. *See Charger Ventures*, 2023 USPQ2d 451, at *4 ("In any given case, different *DuPont* factors may play a dominant role and some factors may not relevant to the analysis."). "Not all *DuPont* factors are relevant in each case, and the weight afforded to each factor depends on the circumstances. Any single factor may control

Serial No. 97354145

a particular case." *Stratus Networks, Inc. v. UBTA-UBET Commc'ns Inc.*, 955 F.3d 994, 2020 USPQ2d 10341, at *3 (Fed. Cir. 2020) (citing *In re Dixie Rests.*, 105 F.3d 1405, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)). However, in any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods and/or services. *See In re Chatam Int'l Inc.*, 380 F.3d 1340, 71 USPQ2d 1944, 1945-46 (Fed. Cir. 2004); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks.").

In applying the *DuPont* factors, we bear in mind the fundamental purposes underlying Trademark Act Section 2(d), which are to prevent consumer confusion as to source and to protect registrants from damage caused by registration of similar marks likely to cause such confusion. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 224 USPQ 327, 331 (1985); *see also Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 34 USPQ2d 1161, 1163 (1995); *DuPont*, 177 USPQ at 566.

We focus our likelihood of confusion analysis on the standard character mark ONVO (Reg. No. 6502747) because it is identical to Applicant's mark. If we find a likelihood of confusion with this mark and its identified services, we need not find it as to the cited registered design mark (Reg. No. 6364493) and its identical identified services. *See, e.g., Fiserv, Inc. v. Elect. Transaction Sys. Corp.*, 113 USPQ 1913, 1917 (TTAB 2015); *In re Max Cap. Grp. Ltd.*, 93 USPQ2d 1243, 1245 (TTAB 2010) (likelihood of confusion analysis confined to most similar cited mark).

Serial No. 97354145

A.    Similarity or Dissimilarity of the Marks

We compare Applicant's mark ONVO and Registrant's mark ONVO, both in standard characters, "in their entireties as to appearance, sound, connotation and commercial impression." *In re Detroit Ath. Co.*, 903 F.3d 1297, 128 USPQ2d 1047, 1048 (Fed. Cir. 2018). *See also Palm Bay Imps. Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005). The marks are identical in all respects, as Applicant acknowledges. 6 TTABVUE 11, 17. This *DuPont* factor weighs heavily in favor of a likelihood of confusion. *See i.am.symbolic*, 123 USPQ2d at 1748.

B.    Similarity or Dissimilarity of the Services, Channels of Trade and Conditions of Sale

Under these *DuPont* factors, we compare the services as they are identified in the application and cited registration. *See Detroit Ath. Co.,* 128 USPQ2d at 1052; *Dixie Rests.,* 41 USPQ2d at 1534; *see also Stone Lion Cap. Partners, LP v. Lion Cap. LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1161 (Fed. Cir. 2014). Again, the partial refusal is limited to the Refused Services.

1.    Similarity of the Services

This *DuPont* factor "considers whether 'the consuming public may perceive [the respective goods [or services] of the parties] as related enough to cause confusion about the source or origin of the goods [or services]." *In re St. Helena Hosp.*, 774 F.3d 747, 113 USPQ2d 1082, 1086 (Fed. Cir. 2014) (quoting *See Hewlett-Packard Co. v. Packard Press Inc.*, 281 F3d 1261, 62 USPQ2d 1001, 1004 (Fed. Cir. 2002)). Although the services identified in the application and cited registration are not identical,

- 5 -

Serial No. 97354145

identity is not required to support a finding of likelihood of confusion. *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) ("[I]t is not necessary that the products [or services] of the parties be similar or even competitive to support a finding of likelihood of confusion.") (quotation omitted); *see also On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000) (the services need not be identical or even competitive to find a likelihood of confusion). Rather "likelihood of confusion can be found if the respective products are related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that they emanate from the same source." *Coach Servs.*, 101 USPQ2d at 1722 (citation and internal quotation omitted).

Moreover, and of particular importance here, the degree of similarity between the services required for confusion to be likely decreases because the marks are identical. *DeVivo v. Ortiz*, 2020 USPQ2d 10153, at *11 (TTAB 2020). Accordingly, we find unpersuasive Applicant's arguments that "neither Applicant nor [Registrant] offer overlapping goods and services," "[a]s the Examining Attorney indicates in the submitted evidence, there may be companies that provide both goods and services of the type at issue here, but neither the registrant nor Applicant's application claim both," and "[t]he same purchaser will know the difference between gasoline, diesel and an electric charger." App. Br., 6 TTABVUE 12-15. In any event, it is not necessary for the services to be "overlapping" in order to find that they are related for purposes of our likelihood of confusion determination. *Coach Servs.*, 101 USPQ2d at 1722.

Serial No. 97354145

To demonstrate relatedness, the Examining Attorney submitted Internet printouts showing that "retail store services featuring convenience store items," "retail store services in the nature of truck stops, travel centers and fuel stops featuring fuel" and "retail convenience stores," such as those identified in the cited registration, commonly offer at the same location and under the same mark electric vehicle charging and refueling services such as those identified in the application. Examples include: Casey's, Royal Farms, Wawa, Love's, Sheetz, Pilot and Shell,[3] April 18, 2023 Final Office Action, TSDR 15-123, as well as BP and Circle K. August 29, 2023 Request for Reconsideration Denied, TSDR 58-105.

Additional Internet printouts show that the same companies commonly offer at the same location and under the same mark "retail store services in the nature of … fuel stops featuring fuel" such as those identified in the cited registration, and "rubber tire repair services" such as those identified in the application. Examples include: Smiths's Chevron, Bon Air Shell, and Eli's Service Station, April 18, 2023 Final Office Action, TSDR 125-143, as well as Bayside Tire and Auto Center, Bledsoe's, Bob Lee's Tire Pros, Harbor Springs Car Care, Harhart's Service Station, Milito's Gas Station, Needham Service Center, and Seversin's Auto Service Center. August 29, 2023 Request for Reconsideration Denied, TSDR 225-276, 281-336.

Evidence showing that the involved services are offered by companies under the same mark supports a finding of relatedness. *See, e.g., Detroit Ath. Co.*, 128 USPQ2d

---

[3] Additional evidence from the Shell website showing Shell gas stations also offer EV charging stations is attached to the August 29, 2023 Request for Reconsideration Denied, TSDR 106-121.

Serial No. 97354145

at 1050 (crediting relatedness evidence showing that third parties use the same mark for the goods and services); *Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *46 (TTAB 2022) (third-party websites promoting sale of both parties' goods showed relatedness).

In sum, we find the evidence amply demonstrates that the electric vehicle charging and refueling services identified in the application are related to the "retail store services featuring convenience store items," "retail store services in the nature of truck stops, travel centers and fuel stops featuring fuel" and "retail convenience stores" identified in the cited registration, and that the "rubber tire repair" services identified in the application are related to the "retail store services in the nature of … fuel stops featuring fuel" identified in the cited registration. Thus, the second *DuPont* factor supports a finding of a likelihood of confusion.

2.    Similarity or Dissimilarity of Trade Channels

Pointing to Registrant's website, Applicant argues confusion is unlikely because Registrant's "services relate to providing fuel and food: E10, 87 Octane, 89 Octane, 92 or 93 octane and diesel," while

> Applicant's services are intended to be performed to electric vehicle holders, that have different needs than a gas vehicle holder. In other words, Applicant's consumers will be holders of an electric vehicle and will require electricity to charge their batteries. The same purchaser will know the difference between gasoline, diesel and an electric charger. Moreover, the fact that convenience stores are closer or in close proximity to a gas station, this proximity is not conclusive that consumers will confused [sic] the source of the goods and the emanation of the services.

6 TTABVUE 14-15.

- 8 -

Serial No. 97354145

We remind Applicant that our determination under this *DuPont* factor is based on the descriptions of services in the application and cited registration, not on extrinsic evidence of actual use. *i.am.symbolic,* 123 USPQ2d at 1749-50. In other words, an applicant may not restrict the scope of the services covered in its application or the cited registration by argument or by extrinsic evidence. *Stone Lion*, 110 USPQ2d at 1162 ("It was proper, however, for the Board to focus on the application and registrations rather than on real-world conditions …."); *Octocom Sys. Inc. v. Hous. Comput. Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed."). Accordingly, Applicant's arguments about the "real world" channels of trade and classes of purchasers are inapposite.

Because the identifications of services in the application and cited registration contain no limitations as to channels of trade and classes of purchasers, it is presumed that the respective identified services move in all channels of trade normal for those services, and that they are available to all usual classes of purchasers for those services, who are members of the general public and would include drivers who need to refuel/recharge their motor vehicles. *See Stone Lion*, 110 USPQ2d at 1161; *see also Coach Servs.*, 101 USPQ2d at 1723 (absent limitation, "goods are presumed

- 9 -

Serial No. 97354145

to travel in all normal channels … for the relevant goods."); *In re Linkvest S.A.,* 24 USPQ2d 1716, 1716 (TTAB 1992).

As neither the application nor the cited registration contains limitations as to the channels of trade or classes of purchasers, and in light of the above-discussed evidence of third party commercial websites showing that companies such as Royal Farms, Sheetz, Shell, BP, Smith's Chevron and Blesdoe's offer electric vehicle charging and refueling services and/or rubber tire repair services at the same location as retail store services featuring convenience store items, retail store services in the nature of truck stops, travel centers and fuel stops featuring fuel, and/or retail convenience stores, we find the channels of trade and classes of purchasers to be the same for the services identified in the application and cited registration. *See In re Anderson*, 101 USPQ2d 1912, 1920 (TTAB 2012); *see also In re Thomas*, 79 USPQ2d 1021, 1023 (TTAB 2006) (deeming channels of trade and classes of purchasers to be the same for jewelry and jewelry stores when the application and registration contain no limitations).

Evidence from the Lexis/Nexis database of a sampling of U.S. publications showing gas stations and convenience stores featuring gasoline commonly offer electric vehicle charging refueling services at the same locations bolsters this finding. August 29, 2023 Request for Reconsideration Denied, TSDR 122-180. *See Charger Ventures*, 2023 USPQ2d 451, at *3, 5-6 ("Because the record shows that companies are known to offer both residential and commercial services under the same mark and, often, on the same website, we find that substantial evidence supports the

- 10 -

Serial No. 97354145

Board's finding[s]" that they are related and that there is "some overlap" in trade channels).

The record demonstrates that it is common for services of the types identified in the application and cited registration to be offered by the same companies at the same locations, where they will be encountered by the same consumers. The third *DuPont* factor therefore supports a finding of likely confusion.

### 3.    Purchasing Conditions

Next, we consider the fourth *DuPont* factor, the conditions under which the services are likely to be purchased, e.g., whether on impulse or after careful consideration, as well as the degree, if any, of sophistication of the consumers. A heightened degree of care when making a purchasing decision may tend to minimize likelihood of confusion. *See, e.g., In re N.A.D., Inc.*, 754 F.2d 996, 224 USPQ 969, 971 (Fed. Cir. 1985) (because only sophisticated purchasers exercising great care would purchase the relevant goods, there would be no likelihood of confusion merely because of the similarity between the marks NARCO and NARKOMED). Conversely, impulse purchases of inexpensive services may tend to have the opposite effect. *Palm Bay Imps.*, 73 USPQ2d at 1695. We reiterate that we must consider the conditions of sale based on the identifications of services in the application and cited registration. *Stone Lion*, 110 USPQ2d at 1161-62 (quoting *Octocom*, 16 USPQ2d, at 1787). Accordingly, Applicant's arguments concerning purchasing conditions and consumer sophistication pertaining to electric vehicles, 6 TTABVUE 15-17, rather than the services identified in the application and cited registration, are unavailing.

- 11 -

Serial No. 97354145

Here, neither the application nor cited registration contains restrictions as to purchaser or price. We therefore must presume that the services identified in the application and cited registration are available to all drivers at all possible price points. Inasmuch as all vehicles need to refuel or recharge, the consumers of the involved services include owners and drivers of virtually any vehicle. When relevant consumers include both discerning purchasers and less sophisticated consumers, precedent requires that we base our decision on the least sophisticated potential purchasers. *Stone Lion*, 110 USPQ2d at 1163. Moreover, it is settled that even sophisticated purchasers are not immune from source confusion, especially where the marks are identical. *See In re Rsch. Trading Corp.*, 793 F.2d 1276, 230 USPQ 49, 50 (Fed. Cir. 1986) (citing *Carlisle Chem. Works, Inc. v. Hardman & Holden Ltd.*, 434 F.2d 1403, 168 USPQ 110, 112 (CCPA 1970) ("Human memories even of discriminating purchasers … are not infallible.")).

The fourth *DuPont* factor is neutral.

C.    Conclusion

The marks are identical, the Refused Services are related to the services identified in the cited registration, and they are sold to the same classes of purchasers in the same trade channels. Accordingly, the first, second and third *DuPont* factors weigh in favor of a finding of likelihood of confusion, with the first *DuPont* factor weighing heavily so. The fourth *DuPont* factor is neutral, and no *DuPont* factor weighs against a finding of likelihood of confusion.

Serial No. 97354145

We therefore conclude confusion is likely between Applicant's mark ONVO and the identical cited registered mark ONVO (Reg. No. 6502747) when the marks are used in association with their respective identified services.

**Decision**: The partial refusal to register Applicant's mark under Trademark Act Section 2(d) is affirmed as to the Refused Services.

The application will proceed solely as to the identified "Electric vehicle service station for maintenance of electric vehicles" in Class 37.

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I, Angel Roman Campos, hereby certify that on this 12th day of November 2024, I electronically filed the foregoing INITIAL BRIEF OF APPELLANT using the U.S. Court of Appeals for the Federal Circuit's CM/ECF filing system. Counsel for Appellee was electronically served through the Court's CM/ECF filing system pursuant to Fed. R. App. P. 25(c) and 25(d), and Fed. Cir. R. 25(a) and 25(e)(1).

<u>/s/ *Roman Campos*</u>

Angel Roman Campos, Esquire
*Counsel for Appellant*

MUNCY, GEISSLER, OLDS & LOWE, PC
125 S. Royal St., Alexandria, VA 22314
Telephone: (703) 621-7140
Email: arc@mg-ip.com;
mailroom@mg-ip.com

## **CERTIFICATE OF COMPLIANCE**

### **With Type-Volume Limitation, Typeface Requirements, And Type Style Requirements**

1.  This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(A) and Federal Circuit Rule 32(a):

    this brief contains 4481 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), and Federal Circuit Rule 32(b).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because:

    this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 Times New Roman</u>.

Dated: November 12, 2024

/s/ *Roman Campos*
_____
Angel Roman Campos, Esquire
*Counsel for Appellant*

MUNCY, GEISSLER, OLDS & LOWE, PC
125 S. Royal St., Alexandria, VA 22314
Telephone: (703) 621-7140
Email: arc@mg-ip.com;
mailroom@mg-ip.com